No. 20-_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

*In re* MARCO RUBIO*, et al.,*

*Petitioners.*

MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF STATE; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES OF AMERICA,

*Petitioners–Defendants,*

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS,

*Respondent,*

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-HARVARD FACULTY CHAPTER; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT NEW YORK UNIVERSITY; RUTGERS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS; MIDDLE EAST STUDIES ASSOCIATION,

*Real-Parties-in-Interest–Plaintiffs.*

## PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS AND EMERGENCY MOTION FOR STAY PENDING CONSIDERATION OF THE PETITION AND FOR AN IMMEDIATE ADMINISTRATIVE STAY

BRETT A. SHUMATE
 *Assistant Attorney General*

ERIC D. McARTHUR
 *Deputy Assistant Attorney General*

MARK R. FREEMAN
AMANDA L. MUNDELL
SOPHIA SHAMS
 *Attorneys, Appellate Staff*
 *Civil Division*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., NW*
 *Washington, DC 20530*
 *202-353-9018*

## INTRODUCTION AND SUMMARY

This petition arises from an ongoing bench trial before the Hon. Judge Young in the District of Massachusetts. The district court has decreed that, by submitting certain highly sensitive documents to the court for inspection *in camera*, the government waived its privileges in those documents. The court announced that waiver ruling from the bench mid-trial, notwithstanding that it had originally assured the government that its asserted privileges would be honored, and immediately began ordering the government to share the documents with opposing counsel. And the court has since rebuffed repeated requests for reconsideration or stay of most of its privilege rulings, instead directing the government as recently as this morning to share privileged documents with plaintiffs and discuss them in open court without any prior notice to the government. The court has further directed that the government must provide a privilege log by **tomorrow, Friday, July 11, 2025, at noon**, Add.541-42, reflecting only law-enforcement privilege assertions and with all other privileges deemed waived.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Appellate Procedure 21, the federal government respectfully petitions this Court to issue a writ of mandamus directing the district court (i) to reverse its waiver finding, (ii) to vacate its disclosure orders predicated on that finding, and (iii) to allow the government to claw back the privileged documents or portions of documents that the court has already compelled the government to disclose. In addition, because of the imminent (and needlessly expedited) deadline imposed by the court and the court's demonstrated

willingness to order from the bench that the government disclose additional privileged material during trial, the government respectfully requests that the Court grant a stay pending its consideration of this mandamus petition, including an immediate administrative stay. Plaintiffs oppose this petition and motion.

The district court's waiver ruling plainly warrants an exercise of this Court's mandamus authority. Judge Young's sole basis for his bench ruling that the government had waived its privileges was the fact that the government provided the documents to the court for *in camera* inspection. The Supreme Court has specifically "approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection, and the practice is well established in the federal courts." *United States v. Zolin*, 491 U.S. 554, 568 (1989). At every turn, moreover, the government has stressed that the documents at issue are subject to various privileges—including, in the case of one confidential State Department report prepared at the President's request, the presidential communications privilege. The court initially assured the government it would honor the privilege claims. Add.104; Add.402. Then, abruptly, after the government had shared the materials with the court in reliance on those assurances, the court changed its mind.

Pressed to explain its about-face, the district court declared that a full waiver was warranted because the government had given the materials to the court in an attempt to bolster the government's case on the merits. But this claim too is belied by the record: The government agreed to provide the materials to the district court *in camera*

only because the district court itself asked to see them. *See, e.g.*, Add.136; Add.346-47; Add.402-03. Indeed, this is a bench trial: If the district court did not want to receive the *in camera* materials, it could simply have rejected the filings or refused to consider them. Or, if it wanted the documents produced to plaintiffs, the court should have analyzed the government's asserted privileges. The Supreme Court has never suggested that *in camera* disclosures to a federal court vitiate privileges altogether, let alone that *in camera* submissions made at a court's own invitation have such a draconian effect. And for good reason: Under the district court's rule, litigants would have no choice but to refuse to cooperate with even the most commonplace judicial requests for *in camera* review lest the litigants later be deemed to have waived their privilege claims altogether.

The district court's error was especially egregious with respect to the State Department report subject to the presidential communications privilege. The government repeatedly highlighted that document for the district court and stressed its privileged status, including by providing a declaration from a White House official formally invoking the privilege. Add.505. The presidential communications privilege is a form of executive privilege grounded in the Constitution itself. The Supreme Court has stressed that assertions of the privilege must be "accorded that high degree of respect due the President of the United States." *United States v. Nixon*, 418 U.S. 683, 714-15 (1974); *see also id.* at 715-16 (directing the district court not to release *in camera* material containing privileged presidential communications "to anyone"). Against that background, it is altogether remarkable that the district court here was willing to declare

from the bench that the government had waived its assertion of presidential communications privilege over a highly sensitive State Department report merely by submitting that report at the district court's own request for review *in camera*. Although the court partially walked back that ruling today after the government's vociferous objection, stating that its waiver ruling as to the presidential communications privilege was "premature" and the issue was "under advisement," the court has provided no assurance that it will not soon turn around and direct the government to disclose the State Department report to opposing counsel. Add.615.

For the foregoing reasons and those set out below, this Court should grant mandamus. And because the government is likely to prevail on this mandamus petition and faces irreparable harm from further imminent court-ordered disclosures of privileged material, the Court should also grant a stay pending mandamus (including an immediate administrative stay prior to tomorrow's noon deadline). If the Court denies a stay, we respectfully request that the Court grant at least a short administrative stay to permit the Solicitor General an opportunity to seek relief from the Supreme Court if needed.

## STATEMENT

**1.** The underlying case in district court arises out of actions taken pursuant to two recent executive orders aimed at combatting terrorism. On January 20, 2025, the President signed Executive Order 14,161, *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, which states that it is the policy of the

United States to "protect its citizens from aliens who intend to commit terrorist attacks, threaten our national security, espouse hateful ideology, or otherwise exploit the immigration laws for malevolent purposes." 90 Fed. Reg. 8451, 8451. It further declares the need to ensure that aliens "do not advocate for, aid or support designated foreign terrorists and other threats to our national security." *Id.* Among other things, the order calls for executive departments and agencies to "identify all resources," "determine the information needed," "submit ... report[s]," "[e]valuate and adjust" existing policies, programs, and guidance with respect to the vetting and screening of foreign nationals, as well as "recommend any actions necessary to protect the American people from the actions of foreign nationals who have undermined or seek to undermine the fundamental constitutional rights of the American people." *Id.* at 8451-52.

In the wake of an "unprecedented wave of vile anti-Semitic discrimination, vandalism, and violence" against citizens and "especially in our schools and on our campuses," the President signed a second executive order on January 29, 2025. Executive Order 14,188, *Additional Measures to Combat Anti-Semitism*, 90 Fed. Reg. 8,847, 9,947. The order directs executive agencies to use "all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence." *Id.* The order also reaffirms Executive Order 13899, *id.*, which explicitly provides that "agencies shall not diminish or infringe upon any right protected under Federal law or under the First Amendment," 84 Fed. Reg

68,779, 68,779. Executive Order 14,188 further directs the Secretary of State, the Secretary of Education, and the Secretary of Homeland Security to submit a report to the President "identifying all civil and criminal authorities or actions within the jurisdiction of that agency" that might be used "to curb or combat anti-Semitism." 90 Fed. Reg. at 8,847. It also directs them to include in their reports "recommendations for familiarizing institutions of higher education with the grounds for inadmissibility under 8 U.S.C. § 1182(a)(2) so that such institutions may monitor for and report activities by alien students and staff relevant to those grounds and for ensuring that such reports about aliens lead, as appropriate and consistent with applicable law, to investigations and, if warranted, actions to remove such aliens." *Id.* at 8,848.

**2.** Plaintiffs are university faculty and student associations comprising citizen and noncitizen members. *See* Add.64-65. In March 2025, they filed suit against various government agencies and officials, alleging, *inter alia*, that defendants violated the First Amendment and the Administrative Procedure Act by implementing a so-called "ideological deportation policy" of "arresting, detaining, and deporting" noncitizen students and faculty solely because they have engaged in "pro-Palestinian protests" and related "expression and association." Add.61, 63, 66-67.[1]

---

[1] The district court dismissed plaintiffs' Fifth Amendment claim. *See* Add.51 (Dkt. 128).

Plaintiffs filed a motion for a preliminary injunction on April 1. Invoking Fed. R. Civ. P. 65(a), the district court ordered that the motion be consolidated with a trial on the merits. Add.112. That trial began on July 7, 2025.

Prior to trial, plaintiffs served broad discovery requests that sought, *inter alia*, all documents concerning (1) any adverse action taken or even considered against nine particular individuals,[2] (2) the surveillance of noncitizen social media accounts generally, and (3) proposed or actual actions taken against any non-citizen engaged in any pro-Palestinian, pro-Hamas, or pro-Jihadist speech. Add.234-72 (interrogatories). Pursuant to court order, Add.47 (Dkt.98), the government submitted sealed and public version of the certified administrative record with the district court on May 29, 2025. Add.273; Add.278.

The district court denied the government's request for a protective order to limit the court's review to the administrative record, *see* Add.213, but later entered a protective order with respect to discovery material, *see* Add.360, and provided guidance to the parties regarding the scope of discovery. For instance, the court stated that it expects the government to produce "every contemporaneous document that exists up and down the chain of command within the government bureaucracy that bears on" the plaintiffs' discovery requests. Add.195. But the court also recognized that information subject to the law enforcement or deliberative process privilege could be

---

[2] The district court subsequently narrowed the list to five individuals. *See* Dkt.125.

withheld from disclosure, Add.345-46, 350, and admonished against discovery into high-ranking agency officials, Add.348-49; *see also* Add.192 ("I'm not going to permit any direct discovery of the President or the high executive officials that you have named and sued in their official capacity. I'm not going to require that they answer interrogatories or, um, submit themselves to discovery at all."). The government accordingly served responses and objections to plaintiffs' amended requests for production and interrogatories and produced one volume of responsive documents, while withholding various privileged documents.

With respect to the documents that the government withheld in full, the court invited the government to produce these documents for *in camera* review. Specifically, the court stated that it "will allow ex-parte filing, and ... will review the material ... in camera." Add.204. The court further noted that it "would like to see" specific privileged materials, such as "the protocol that has been issued to ... consular officers." Add.346. These invitations came with repeated assurances that the court would "honor th[e] privilege" afforded to the submitted documents. Add.402 (addressing the law enforcement privilege); *see also* Add.195 ("The government has a deliberative privilege. I must honor it and I must honor it without any cost to the defendants, that is drawing any adverse conclusions."). The court further suggested that even if it relied upon the documents to make certain findings, it would not "go any further" and disclose the materials. Add.402-03.

The government accordingly submitted two sets of documents for *in camera* review.[3]  *See* Add.356 (the June 11 submission); Add.520 (the July 2 submission).  Each submission included a cover sheet identifying the documents that were submitted and detailing any privileges that may apply to their contents.  *See* Add.356; Add.520.  The June 11 submission contained 15 documents, including a State Department report addressed to the Deputy Assistant to the President and Executive Secretary of the National Security Council, which contains a "recommendations" section "regarding actions and authorities [in] the jurisdiction of the Department of State to combat anti-semitism and "addresses potential policies and guidance for the Government to pursue regarding combatting anti-semitism and familiarizing institutions of higher education with the security and related grounds for visa inadmissibility."  Add.356; Add.508.  The public cover sheet for this submission stated that "This document is subject to the deliberative process privilege and the presidential communications privilege and therefore has been withheld from Plaintiffs in full."  Add.356.  The June 11 submission also included various reports, letters, and action memoranda that the government identified as subject to either the law enforcement or deliberative process privilege.  *Id.*

The public cover page for the government's July 2 submission did not identify the documents by name, but stated that the government was "submit[ting] documents

---

[3] The district court has referred to a third *in camera* submission, but these were documents submitted to the court on June 27 and consisted of unredacted version of documents that had already been produced to plaintiffs with privilege redactions.

subject to privilege for *in camera* inspection" "[p]ursuant to the [district court's] invitation." Add.520. The cover page noted that the documents "contain information subject to the law enforcement and deliberative process privileges," and possibly "additional privileges," although the government had been unable to complete its privilege review before providing the documents to the court. *See* Add.520 ("[Undersigned counsel just received [these documents] on July 1, 2025."). The government "emphasize[d] that [the] documents are for *in camera* review only and that the Government does not waive any applicable privileges." Add.520.

Prior to the July 2 submission, Plaintiffs filed a motion to compel documents that the government had thus far withheld, *see* Add.373, which the government opposed, Add.424. Among other things, the government noted that it had asserted various privileges over numerous documents. Add.434-43. For example, the government noted that the White House has formally asserted the presidential communications privilege over the State Department report, which was solicited by the President, received by his advisors, and used for decision making. *See* Add.439-41. The White House similarly asserted the privilege over portions of a deposition by John Armstrong pertaining to presidential communications among representatives of the White House, State Department, Defense Department, and DHS. Add.438-40. The government provided a sworn declaration from Gary Lawkowski, Deputy Assistant to the President and Deputy Counsel invoking the privilege. *See* Add.506-10. As Mr. Lawkowski explained, without protection of the presidential communications privilege,

"presidential advisors and their staffs would be chilled from having candid conversations with senior officials in cabinet agencies, gathering relevant information, exploring alternatives, and providing fully informed recommendations regarding the performance of the President's duties." *See* Add.509.

The government also asserted the law enforcement privilege, deliberative process privilege, and attorney-client privilege, Add.435-39, 441-43, and provided sworn declarations in support, Add.494-98 (Decl. of John Armstrong regarding deliberative process privilege); Add.499-505 (Decl. of William S. Walking regarding deliberative process and law enforcement privileges); Add.511-15 (Decl. of John Armstrong regarding law enforcement privilege).

The district court denied plaintiffs' motion on June 30, Add.516-19, and the government accordingly did not produce any of the documents that had been provided to the court in the June 11 *in camera* submission. Nor did the government produce any of the documents that were subsequently provided to the court in the July 2 *in camera* submission.

After inviting the government to submit privileged documents *in camera* and assuring the government that asserted privileges would be honored, the district court did an about-face during the first day of trial on July 7. For the first time, at an afternoon housekeeping hearing, the court stated:

> All those supposedly reserved privileges, they're all waived. You can't dump a bunch of documents on the Court and say, "Well you go through them and really decide what our

privileges are." Never asserted. They're all waived. Add.540-41. The court subsequently stated that if the government believes the court was mistaken as to "the limits of the law enforcement privilege," the government could provide "a privilege log . . . by Friday at noon." Add.542-43. The court further stated that the log "better be specific or I'll rule that you've waived it." Add.543.

The government sought to clarify whether the court was "referring to all of the ex-parte materials" or "just the ones filed on" July 2. Add.547. The court stated that it was "referring to all" and wanted the government "to point out specifically ... some of the law enforcement privilege or national security privilege." *Id.* Government counsel asked whether that log could "identify material that ... the Court has said would be deliberative," and the district court said "No, and the reasons for that is . . . there's no basis for dumping material on me and then saying, 'Oh, by the way, this is deliberative, take a look at it ex-parte in camera." Add.549.

The government promptly filed a motion for reconsideration of the district court's bench order determining that the government had waived all privileges for the documents produced to the court *in camera*. Add.526-32. The court denied the motion. Add.59 (Dkt.192).

Only July 9, the government filed a motion to clarify "the breadth of the Court's July 9 bench ruling to confirm whether the Court has found the Government to have waived properly invoked privileges in the first in camera submission." Add.535. Without evaluating the applicability of the privilege to any particular document or

category of documents, the district court denied the motion orally on July 10.  The court made clear that it considered all privileges to be waived with respect to the *in camera* submissions.  The court based its waiver ruling in part on its belief that government provided the documents *in camera* in an effort to "further its case."  Add.613.  With respect to the State Department report, the court took its disclosure "under advisement" but did not otherwise reconsider its waiver ruling.  Add.615.  Over the government's repeated objections, the district court handed plaintiffs certain privileged reports and permitted plaintiffs' counsel to examine witnesses regarding them.  As of this filing, the government is under a court order to provide a privilege log for the remaining documents and is permitted to raise only the law enforcement privilege by Friday, July 11, at 12 p.m.  In the meantime, the district court has begun ordering the government to provide documents to plaintiffs without waiting for additional privilege logs and, given the court's waiver ruling, the government will have no basis for resisting disclosure if the orders continue.  It is unclear when the district court may order any additional documents produced, but the government anticipates that it could be as early as Friday afternoon.  The district court has not entered an order staying the Friday deadline.

## ARGUMENT

### I. THIS COURT SHOULD EXERCISE ITS MANDAMUS AUTHORITY TO CORRECT THE COURT'S ORDER REQUIRING DISCLOSURE OF PRIVILEGED DOCUMENTS.

Mandamus relief is appropriate where a petitioner has "no other adequate means to attain the relief desired," where "the right to the writ is clear and indisputable," and where "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004); *see, e.g.*, *United States v. Horn*, 39 F.3d 754, 769 (1st Cir. 1994) That standard is amply satisfied here: the district court's waiver ruling conflicts with clear Supreme Court precedent, the government has no alternative means of relief, and much of the damage resulting from the omnibus, unreasoned disclosure of privileged documents—including, potentially, documents subject to executive privilege—cannot be undone.

### A. The District Court Manifestly Erred By Finding Waiver Based On A Mere Submission of Privileged Documents To The Court Itself For *In Camera* Inspection.

The district court's waiver ruling, issued from the bench on the first day of trial, represents a clear error of law and a gross abuse of discretion. Neither this Court nor the Supreme Court has ever held that the mere submission of documents to a federal court for *in camera* inspection—let alone such a submission at the court's own invitation—vitiates a litigant's claim of privilege. To the contrary, the Supreme Court has recognized the legitimacy of *in camera* review procedures and has specifically held that such procedures do *not* effect a waiver of privilege. *United States v. Zolin*, 491 U.S.

14

554 (1989).  The government should not be punished for having tried in good faith to accommodate the district court's request for *in camera* review.

1.    The Supreme Court has long recognized that "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege."  *Zolin*, 491 U.S. at 568.  Indeed, the "Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection, and the practice is well established in the federal courts."  *Id.* (citation omitted); *see Kerr v. United States Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 404-05 (1976).  It is irrelevant, for purposes of waiver, that "examination of the [documents], even by the judge alone, in chambers might in some cases jeopardize the security which the privilege is meant to protect."  *Zolin*, 491 U.S. at 570 (quotation marks omitted).  That ever-present risk is a reason why courts should not lightly request to review litigants' privileged documents *in camera*—not a reason to find automatic waiver when litigants comply with such a request.

An implied unconditional waiver of privilege is an unusual and extreme penalty in civil litigation.  *See, e.g.*, *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22-23 (1st Cir. 2003) ("[C]ourts should be cautious about finding implied waivers," and such claims "must be evaluated in light of principles of logic and fairness," "fastidious[ly] sifting … the facts and [] careful[ly] weighing … the circumstances.").  Indeed, a finding of automatic waiver is at odds with the typical

approach courts take to privilege disputes resolved *in camera*:  Normally, after a court determines which portions of the privileged documents, if any, can be "excised, … the material is restored to its privileged status and should be returned … to its lawful custodian."  *United States v. Nixon*, 418 U.S. 683, 715-16 (1974) (directing the district court not to release *in camera* material containing privileged presidential communications "to anyone").

The district court's contrary approach turns the *in camera* review process on its head.  Courts have developed the procedure of inspection *in camera*  precisely because it provides a means of adjudicating privilege disputes *without* risk of waiver.  Accordingly, *in camera* inspection requires "scrupulous protection against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues of the trial for which it is sought."  *Nixon*, 418 U.S. at 714.  Were it otherwise, parties would have little choice but to refuse to comply with judicial requests for *in camera* inspection of privileged materials out of fear that any disclosure to the court would forever waive privilege.  The courts of appeals, in turn, would then be left to arbitrate these privilege disputes in mandamus petitions or in appeals from contempt orders.

Courts have accordingly recognized that a party does not waive privilege merely by submitting documents for *in camera* review.  The D.C. Circuit has explicitly rejected the argument that disclosure for *in camera* review constitutes waiver of privilege, noting the absence of any case to the contrary.  *S.E.C. v. Lavin*, 111 F.3d 921, 933 n.15 (D.C.

Cir. 1997) ("Not only did the district court properly exercise its discretion in deciding to review the tapes *in camera,* but we know of no case, and the SEC points to none, where the submission of privileged material to the court for *in camera* review in order to demonstrate the existence of a privilege has itself been held to constitute waiver."). Other courts have reached the same conclusion. *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 688 (W.D. Mich. 1996); *Cobell v. Norton*, 213 F.R.D. 69, 75 (D.D.C. 2003); *see also Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (holding that a party did not waive privilege when it produced documents under an accelerated discovery timeline).

The district court's abrupt decision to treat these privileges as waived was especially misguided because the district court never warned the government that it would do so. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.") To the contrary, the court *invited* the government to produce these documents, stating that it "expect[ed]" broad production of evidence by the government, Add.193-94, and that, for privileged material, the court "will allow ex-parte filing, and ... will review the material ... in camera," Add.204. The court further assured government counsel that the court would "honor" privileges afforded to the submitted documents. Add.402 (law enforcement

privilege); *see also* Add.195 ("The government has a deliberative privilege. I must honor it and I must honor it without any cost to the defendants, that is drawing any adverse conclusions."). To that end, the court initially denied plaintiffs' motion to compel documents that were contained in the government's June 11 in-camera submission. So far as the government knew, until July 7, the district court was planning to treat those documents as privileged and shield them from disclosure.

Pressed to explain its waiver ruling, the district court declared after the fact that it had found waiver because it believed the government disclosed the documents to the court in order to gain some sort of advantage in the case. But as the record makes clear, that is wrong: The government submitted the materials to the court *in camera* because the *district court invited the government to do so*. Tellingly, the court did not reject the government's *in camera* submissions or suggest at any point that they were improper. Nor does the court's theory that the government somehow hoped to gain advantage by disclosing its own privileged documents to the trial judge withstand scrutiny. These are privileged materials that the government withheld in toto. The government could not have expected to rely on them at trial without sharing them with plaintiffs. The government submitted the materials to the court *in camera*—reiterating its privilege assertions—only because the court itself asked to see the documents. The waiver rules should not incentivize parties to defy such judicial requests.

2. The court's ruling deeming the privileges waived and subjecting the government's documents to disclosure at trial at any time is all the more wrong because

18

the court engaged in no analysis regarding whether disclosure was even justified when balanced against the privilege asserted. Courts have not hesitated, on petitions for a writ of mandamus, to correct a district court's categorical ruling on the availability of privilege when the district court fails to adequately conduct the required analysis. *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1203-07 (9th Cir. 2019) (granting mandamus to vacate discovery orders that failed adequately to analyze executive privilege and deliberative process privilege assertions); *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006) (district court erred when it "determin[ed] that no law enforcement privilege exists" without conducting the requisite review); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (granting mandamus relief with respect to a district court's finding of a "blanket waiver" of privileges).

This error was especially egregious with respect to the State Department report subject to the presidential communications privilege. As discussed, the government repeatedly highlighted that document for the district court and stressed its privileged status, including by providing a declaration from a White House official formally invoking the privilege. Add.506-10. The Supreme Court has stressed that assertions of the privilege must be "accorded that high degree of respect due the President of the United States." *Nixon*, 418 at 714-15. It is extraordinary that the district court here was willing to declare from the bench that the government had waived its assertion of presidential communications privilege over a highly sensitive State Department report merely by submitting that report at the district court's own request for review *in camera*.

19

Although the court partially walked back that ruling today, it provided no assurance that the court would honor the assertion of executive privilege or even evaluate the privilege assertion on its merits before ordering the document disclosed to plaintiffs. Moreover, several other documents contain attorney-client privileged communications. The court stated that it did not understand why the government opposed releasing the documents because they helped the government's case. Add.566-67. But the Government did not use the *in camera* process to improve its litigating position. This Court's intervention is urgently needed.

3. The other mandamus factors likewise strongly support the government. Disclosure of confidential information is irreversible; although the documents may be clawed back and certain further harm may be adverted, the egg cannot be unscrambled. The government has no adequate alternative remedy to avoid that harm. Courts therefore recognize that mandamus is appropriate to review such disclosure orders. *See, e.g.*, *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *In re von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987) (recognizing that "appeal after judgment" is "inadequate at best" to address compelled disclosure of privileged material).

As noted above, the documents contain information subject to various privileges, including the law enforcement privilege, deliberative process privilege, presidential communications privilege, and attorney-client privilege. As to the highly sensitive State Department report in particular, the court has reserved judgment for now, but the logic (or illogic) of the court's waiver ruling is without limit. If the court ultimately orders

the government to produce the report because the privilege has been waived, the government will be irreparably harmed. *See* Add.509 ("[W]ithout the protection of the presidential communications privilege … presidential advisors and their staffs would be chilled form having candid conversations with senior officials in cabinet agencies, gathering relevant information, exploring alternatives, and providing fully informed recommendations regarding the performance of the President's duties."); *see also Nixon*, 418 U.S. at 708 (explaining that "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately").

As to the remaining documents, although the court has permitted the government to provide a privilege log with respect to documents covered by the law enforcement privilege, the court has otherwise ordered the government to disclose all other documents, even if they are subject to the deliberative process and attorney-client privileges. Disclosure of these documents would seriously undermine the value of the privilege and the sensitivity and security of government operations. *See, e.g.*, Add.497 (explaining that "revelation" of "information pertaining to diplomatic engagement strategies, policy proposals, and interagency coordination . . . could undermine the efforts of the Department [of State] to carry out its mission of promoting peach and security through robust and candid internal deliberations"); Add.503 ("Disclosure of law enforcement privileged information could provide those who wish to harm the United States with valuable information about how the U.S. Government detects,

investigates, and thwarts activity that impacts public safety and national security and violates U.S. laws.").  Mandamus is plainly warranted.

>   **B.    The Government Should Be Permitted To Claw Back Its Privileged Documents Already Disclosed At The District Court's Direction.**

If this Court agrees that the government did not waive its privilege and issues the writ, it should also direct the district court to order the return of any privileged documents to the government.  *See* Fed. R. Evi. 502(b).  Courts are authorized to order a "claw back" in cases where privileged documents are erroneously ordered to be disclosed.  *See, e.g.*, *Cahill v. Insider Inc.*, 131 F.4th 933, 939 (9th Cir. 2025).  Claw back is clearly warranted here.

## II.    THIS COURT SHOULD GRANT A STAY PENDING REVIEW OF THE PETITION AND AN IMMEDIATE ADMINISTRATIVE STAY.

This Court should stay the district court's order pending its consideration of this petition and grant an immediate administrative stay pending its consideration of the stay motion.  A stay is warranted where (1) the applicant has made a strong showing that he is likely to succeed on the merits; (2) the applicant will be irreparably harmed absent a stay; (3) issuance of the stay will not substantially injure plaintiffs; and (4) the public interest supports a stay.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009).  The first two factors are "the most critical."  *Id.*  All factors here favor the government.

For the reasons explained above, the government is likely to succeed on its mandamus petition. The district's waiver ruling contravenes controlling Supreme Court precedent and lacks any foundation in law or logic.

Absent a stay, moreover, the government will be irreparably harmed. Once the government complies with the court's disclosure order, the proverbial cat has been "let . . . out of the bag, without any effective way of recapturing it if the district court's directive [is] ultimately found to be erroneous." *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quotation marks omitted); *cf. Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (observing that "the denial of a stay will utterly destroy the status quo" in a FOIA case). The consequences of such disclosures could spell disaster. For one, many of these documents include highly sensitive information relating to "visa security vetting techniques, methods, and procedures" that, if disclosed, "would compromise the U.S. Government's ability to continue properly vetting visa applicants and visa holders" and "impact[] public safety and national security." Add.514; *see also* Add.498; Add.503-04 (noting that disclosure will harm "efforts to collect information and evidence to thwart ... serious violations that may affect the national security"). Disclosure of these documents, which include pre-decisional and deliberative communications, would also chill communications both between agencies and with the President, the effectiveness of which are crucial to our operation of government. Indeed, one official has provided sworn testimony that the release of sensitive communications "could chill an exchange of information between federal agencies,

other DHS components, and ICE offices and employees, thus impeding their decision-making process." Add.504-05. Another official similarly warned that "presidential advisors and their staffs would be chilled from having candid conversations with senior officials in cabinet agencies." Add.509.

No countervailing harm to plaintiffs or the public will result from granting a stay while this Court considers the government's petition. Plaintiffs are unlikely to suffer any harm from a stay because they are not entitled to privileged documents, let alone on an emergency timeline.

Unless stayed, furthermore, the district court's waiver ruling places the government at immediate risk of suffering further disclosures of privileged information in the trial proceedings or at Judge Young's order. As noted, the court already today directed the government to disclose privileged material to plaintiffs and permitted discussion of the material in open court, over the government's objection and without prior notice. By tomorrow (Friday, June 11) at noon, furthermore, the government must produce a privilege log that must reflect the waiver of all governmental privileges other than certain law-enforcement privileges. The government accordingly asks that the Court issue an immediate administrative stay of all other disclosures of privileged information (including disclosures in open court) pending this Court's ruling on the stay motion. If this Court denies the request for a stay, we respectfully request at the very least that the Court grant an administrative stay for a reasonable period to allow the Solicitor General to seek relief from the Supreme Court if necessary.

24

## CONCLUSION

For the foregoing reasons, the Court should grant the petition for writ of mandamus and direct the district court to reverse its waiving ruling, vacate its disclosure orders, and permit the government to claw back its privileged documents. In addition, the Court should grant a stay pending resolution of this petition, and the Court should also grant an immediate administrative stay either pending consideration of the stay motion or at the very least for a reasonable period to permit the Solicitor General an opportunity to seek relief from the Supreme Court if necessary.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
*s/ Amanda L. Mundell*
AMANDA L. MUNDELL
SOPHIA SHAMS
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *202-353-9018*

JULY 2025

25

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with the limit of Federal Rule of Appellate Procedure 21(d) because it totals 6094 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this petition complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2016 in a proportionally spaced typeface, 14-point Garamond font.

*s/ Amanda L. Mundell*
AMANDA L. MUNDELL

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.  Service has been accomplished via email to the following counsel:

*Counsel for Real-Parties-in-Interest–Plaintiffs:*

Ahilan Arulanantham (arulanantham@law.ucla.edu)
Michael Tremonte (mtremonte@shertremonte.com)
Noam Biale (nbiale@shertremonte.com)
Alexander Abdo (alex.abdo@knightcolumbia.org)
Alexandra Conlon (aconlon@shertremonte.com)
Caroline DeCell (carrie.decell@knightcolumbia.org)
Courtney Gans (cgans@shertremonte.com)
David Jacob Zimmer (dzimmer@zimmercitronclarke.com)
Edwina Bullard Clarke (edwina@zimmercitronclarke.com)
Jackson Thomas Busch (jackson.busch@knightcolumbia.org)
Jameel Jaffer (jameel.jaffer@knightcolumbia.org)
Ramya Krishnan (ramya.krishnan@knightcolumbia.org)
Scott B. Wilkens (scott.wilkens@knightcolumbia.org)
Talya Nevins (talya.nevins@knightcolumbia.org)
Xiangnong Wang (george.wang@knightcolumbia.org)
Yaman Salahi (yaman@salahilaw.com)

The district court has been provided with a copy of this petition for writ of mandamus pursuant Federal Rule of Appellate Procedure 21(a).

*s/ Amanda L. Mundell*
AMANDA L. MUNDELL